Thank you, Your Honor. May it please the Court, I'm Thijinder Singh. I represent the appellant, Eric Stenson. I'll try to hang on to about three minutes for rebuttal. In this False Claims Act case, the complaint alleges that radiologists billed Medicare for diagnostic services performed using cheap consumer-grade displays instead of FDA-approved medical-grade displays. Our brief offers three reasons why those bills were actionable false claims, and if the Court agrees with us about any one of those three, that would be sufficient to reverse the judgment below. The first theory of liability here is that unapproved medical devices are excluded from Medicare coverage. That's set forth in this Court's decision in International Rehabilitative Sciences v. Sebelius and is a clear requirement of the Medicare program. Moreover, Medicare regulations do not permit payment to be made for services that are related to the use of excluded devices. Those two authorities, which are blackletter law together, set forth an independently sufficient basis to reverse. The second theory we have is that providers claiming Medicare funds have the burden to show that the services they provided were reasonable and necessary. That means the services are proven to be safe and effective, are not experimental or investigational, and are appropriate. But to sustain that theory, and I understand, you know, the Tenth Circuit has endorsed that theory as legally viable, but to establish it factually, wouldn't you need to plead facts that show that basically this is just a completely deficient device across the board? You know, a device that's so ill-suited for the purpose that it can't conceivably be used and thought to be reasonable and medically necessary. But have you pleaded enough facts to reach that kind of a threshold? Well, I'd like to address that question in two parts, Your Honor. The first is, what is the legal standard here? And the second is, what does the complaint say about the technologies here? And then also just a third point, which is that the other side hasn't really made that argument. That is, they haven't said, well, these devices are good enough. And so, let's start with the legal standard. This court, again, international... I read their papers as, in fact, saying that, that no one, there's no record of anyone being misdiagnosed by using these screens. That basically is an assertion that the screens are perfectly adequate for their purpose. And so, the question is, did you plead facts to in fact result in misdiagnoses or misdiagnoses? Sure. So, we do have some facts about that. There are allegations in the complaint. You'll find them in paragraphs 53, 62, and 73, including footnote one, explaining that the technology used in consumer-grade displays is qualitatively different from the technology used in medical-grade displays. And the differences matter in the diagnostic setting because they create a real risk that things that could be seen on a medical-grade display will not be seen on the consumer-grade one. The example that's given in paragraph 73, footnote one, is of a cancer mask. So, there was a study that had known cancer in it that was examined on a diagnostic and a non-diagnostic display, and it only appeared on the diagnostic display. So, we think there is a real risk to patients from the use of this technology, which is why the FDA regulates it as a class two medical device with special controls. And so, I think there is enough in the complaint. If more needs to be added, that would be, I think, fruitful ground for amendment, which is something else we thought leave to do. But I also think that in this context, it shouldn't be necessary. Here, as we've argued in the brief, and these are authorities that the other side has not contested, CMS relies on the FDA's determinations of safety and efficacy. And there is pretty much a black letter legal rule that says if a device has not been properly cleared or approved by the FDA, then the device has not been proven to be safe and effective as required for Medicare reimbursement. And so, there's actually a per se legal rule that comes through that factual fact in these cases. Can you hear me? Yes, your honor. I can hear you now. Okay. What additional facts, if you were allowed to amend, would you have planned? So, to the extent the court believes that amendment is necessary to further detail the dangers to patient health from using unapproved displays, we can elaborate on that substantially. As I say, we already have, I think, what ought to be sufficient facts in there to set forth that I think it would really be the type of thing that would be subject to expert testimony down the road. But if that were a concern from the court, we could talk more about it. Are you telling us that it's your position that you don't need to amend? Your honor, yeah. We have taken the position that our complaint is sufficient on its own, that it alleges sufficient facts to state a claim. We have acknowledged that the complaint I'm sure I'm not the first appellate lawyer who wishes he had a different complaint to defend something a little cleaner that explained the legal theories in a little more detail. But all of the essential facts are in there. We have pleaded with particularity that the defendants used unapproved displays. We've pleaded the types of displays. We've provided our exhibit three, which gives you specific procedures and claims that were billed. And we've explained why we think those claims are false. So I think we have quite enough to state a claim and the most sensible course of action would be to simply reverse and allow the case to move forward into discovery. But under this court's precedence, specifically the Swobin decision, if you think we have a viable legal theory, but the complaint doesn't quite plead it in enough detail or with enough clarity, the law is quite clear that it was an abuse of discretion to deny us leave to amend. But I do want to just briefly mention that we have a third independent basis for finding the claims here false. And that is based on the theory of implied false certification. The relevant payment codes that are at issue here are calibrated to certain payment amounts. And those payment amounts take as a direct input, the cost of FDA approved medical displays. And so when the defendants bill the government, bill Medicare using those CPT codes, they are implicitly saying, hey, we use that approved technology that you are paying for when you use these codes. And just as the Supreme Court found in the Escobar decision, that is the sort of implied false certification that makes specific claims about how services were provided that is actionable under the False Claims Act. Would the courts leave unless there are further questions at this time? I would save the rest for rebuttal. All right. Thank you, counsel. We're hearing next from Mr. Popp. Good morning, your honors. Jason Popp on behalf of Appley Radiology Limited. May it please the court, I would like to focus on the three ways that the appellant tries to acrobat around the district court's correct conclusion that there is no law, regulation, or contract that requires a radiologist to use an FDA approved monitor when interpreting x-rays, MRIs, or CT scans. The first is the regulation that the appellant started his discussion about, which is the 405.207. This is the regulation that concerns the use of devices, the use of non-covered devices. This regulation has never been discussed in a single judicial opinion. We would encourage the court to take a close look at the regulatory subpart and the legislative guidance that accompanied that rule, which quickly reveals that this rule has nothing to do with the general types of devices or equipment that a radiologist can use when rendering health care services. Instead, it has to do with the narrow application of when CMS provides independent reimbursement for investigational medical devices. The preamble is clear. It establishes in regulation that certain devices with an investigational device exemption approved by the FDA and certain services related to those devices may be covered under Medicare. I would also point the panel to the FDA publication cited at footnote five of the appellant's opening brief, which discusses FDA's understanding of this particular rule and how it has to do with reimbursement for investigational medical devices, which of course a computer monitor is not. Now, even without that context, the appellant's argument still fails. The regulation excludes coverage for two categories of devices. One is a device that CMS has determined not to be reasonable and necessary. The appellant concedes that's not this case. The second is a device that should be included for quote-unquote other reasons. According to the appellant, that means that any procedure or any medical service that involves the use of a non-approved device is per se non-reimbursable. Has the FDA taken a position on this case? The FDA has not taken a position on this case. Neither has the Department of Justice, except at the district court level where it incurs the 9B and said that they didn't need to reach the merits. You do ask an interesting question, Judge Hawkins. CMS has talked about this regulation in the international rehab case for Sibelius, which only strengthens our position. So that case involved a plaintiff seeking judicial intervention after a CMS contractor had denied coverage for a device that plaintiff wanted to manufacture and Medicare. Why did CMS deny coverage for it? Because it had identified another device on the marketplace that cost 80% less. I would encourage the panel to take a look at CMS brief to this court in that case where it said on page five of its brief, the Medicare coverage statutes, the very ones we're talking about right here, best broad discretion to CMS and provides no role for FDA and Medicare coverage determinations. In the very next sentence, Sibelius, the CBS administrator, said that CMS has promulgated a regulation describing limited circumstances in which Medicare will consider the coverage of devices that are still in the investigational stage in the FDA review process and cited 42 CFR 405.201 at SAC. That's the regulation we're talking about here. What That's the international rehab versus Sibelius case that the appellant relies on, which is a case that involves coverage of independent medical devices. That's not this case. So a couple things. One, I want to be clear about what the appellant's theory is. It's not about the paragraph 73 is the only thing in the record here. And what does it say? That's where the relator says that he talked to some physician, physician unknown, who used a monitor, monitor unknown, not the types of monitors that are being used by the defendant here, and that physician could not diagnose or spot a cancer cell. That's the limited record that we have here in the complaint. But what's important is, Judge Collins, you asked about, you know, what would be included in a leave to amend. Well, the relators already told us what he would include in that, in that leave to amend, and it shows why there should be no such leave. Let's be clear. This allegation is not about the types of monitors that are being used by the defendant. Instead, in his own words, it goes to whether or not the monitors are approved by the FDA. As he says on page 50 of his opening brief, Stinson's claim is not about which monitors radiologists may use, but is instead about what, whether Medicare will pay for services rendered using unapproved monitors. That's the question before this court. It's based on an incurable legal defect. Isn't there an aspect of the claim that these monitors just are so defective that they cannot provide reasonable and necessary results, and therefore violates the statute generally? Isn't that kind of a simple proposition, and why is that wrong? So that's certainly not in the complaint, but you raise an interesting, interesting question. Why couldn't it be in the complaint if he got leave to amend? Well, we're kind of playing whack-a-mole here. At the district court, he said one thing in his complaint. As Judge Zips noted, he alleged a different theory on his motion to dismiss, and now he is extending that. But the reason, Judge Seaborg, where I would direct that this court need not leave to amend is based on this. Well, I, I'm sorry, I just don't agree with you that that legal theory is not in the complaint. I'm looking at count two, paragraph 92, and it is neither medically reasonable nor medically necessary to perform diagnostic readings on monitors that are not developed, manufactured, marketed, or approved for diagnostic readings. And then it says that Medicare will only pay for services that are, quote, reasonable and necessary. So legally, the claim is there, and the 10th Circuit case says that that's valid. So that I mean, you, you could plead, for example, that they hold out some old, you know, monochrome monitor from the 1980s, and they did all their review with that, and, and then allege the same thing. That would state a false claims act claim, because that's clearly not reasonable and medically necessary. That's, that's fraud. So the question is, is this that case, and did they plead facts to show that it's that case? They do not plead facts to show that case. That presents fraud of a slightly different flavor, like the one in the Cordy case, K-H-O-U-R-Y. That's the one where anesthesiologists were billing for services for monitoring patients, but instead of doing that, they're actually playing games on their iPad. So that's rendering services where you're billing, where you're not performing the actual services. So in your example, Judge Collins, if you're using a, and this is the parade of horribles, so let's, let's rewind a little bit. The reasonable and code 410.32. That's what Judge Zips said. That's what the Sixth Circuit said. It already did this work in the Hobbs versus Medquest case. As Judge Zips noted, that regulation is silent with respect to the types of equipment that a radiologist can use. That doesn't mean, to your point, that you're off scots free if you comply with that regulation. In fact, there could be another one that applies, like two sections later, which is 410.34, where CMS has regulated what you have to use for should affirm dismissal for the same reason it did in the Dan Abrams case. The district court disallowed, refused to allow leave to amend based on futility. That's what you're here defending. So explain to us how no allegation of facts could cure the problems that Judge Zips found with the complaint as written. So under his legal theory, as set forth in page 13 of his reply brief, the court should hold that services rendered using unapproved medical devices are not reasonable per se without FDA approval. The entire premise of the argument that no leaves to amend should be allowed is you keep interpreting the complaint as entirely focused on FDA approval of the device, and you're not acknowledging that the complaint, as Judge Collins suggested, may be a bit broader than that. So if we determined that it is a bit broader than that, why would it be futile to allow amendment on at least that aspect of the complaint? The reason I'm drawing that, it's not the way I characterize it, it's the way he characterizes it. His legal theory hinges on FDA approval, which is legally faulty. But to your question, the reason I bring up the Dan Abrams case is because that case involved a similar scenario, where the defendant there was using an FDA-approved device, but he was using it for a purpose the FDA hadn't approved. And the relator there said, well, that's not reasonable and necessary. And what this court said is, well, if you can't point me to a statute, reg, or contract that contraindicates the use in that way, you're going to fail. Also, if you're going to bring this reasonable and necessary claim, you have to have something beyond anecdotes, which is exactly what's in paragraph 73 in footnote one. This court was very critical of a complaint alleging a non-reasonable and necessary standard that lacked the types of published studies that would support... But isn't that why he gets to try again? Well, that would be a third by, it would be, first he said, the FDA prohibits the use of these monitors. The motion to dismiss, he says, no, it's actually CMS. And now, Judge Seaborg, he would be dispensing with this claim about the FDA and coming up with a new theory, where he hasn't pled any facts to suggest that he has that theory. Two other things, though. Let's remember whose claim this is. It's the Department of Justices. If it wants to intervene or pursue this, it can. If CMS wants to institute any rules about the types of monitors that have to be used, like it has done for mammography, it can do that. But the other thing that should really cause hesitation to this panel for allowing this about the defendants in this case. He knows one thing, and he says if he's given leave to a man, what he'll do is provide more explanation about the regulations. That's already before this panel. District Court doesn't need to understand that. But what he has said is, I'm also going to show more information about the intentional misconduct of the defendant. The only thing he knows about the defendant in this case is that when CMS regulates the types of monitors and equipment that you have to comply with in mammography, the defendant does not have to comply with the regulations that CMS has put in place. That flashing red light means you're out of time. I apologize. We'll hear now a rebuttal from Mr. Singh. Thank you, Your Honor. So there are quite a few mischaracterizations in the previous presentation. Can I just ask you, just so that we have it clear, did you at any point in the district court proceedings make a proffer as to what an amended complaint would contain when you sought leave to amend? So we did not provide, for example, a specific alternative pleading. The nature of the amendment, of course, turns on the nature of the deficiency found, because that's what we would be pleading around. I think our position has been that the lack of FDA approval creates per se bars to reimbursement. Although it is true, as the other side says, that CMS makes an independent decision, this court's decision in International Rehabilitative Sciences is very clear. The FDA approval is a necessary but not sufficient condition to reimbursement. That's black letter law in this circuit. Now, we can, as I said, allege more about the law. We can allege more about the risk to patients. Those are things we could do. The district court did not deem those things to be relevant because, in the district court's view, there are no restrictions imposed by CMS on what monitors radiologists use. And you heard Mr. Popp talk about that regulation here as well, the regulation 410.32. That has two conditions in it. A physician has to approve the test, and a physician or appropriate person has to supervise the test. And the other side's position is, as long as those conditions are met, it's always reasonable and necessary. We gave an example in the reply brief that shows why this couldn't be true. So, Judge Collins, you gave a really good example. What if they were using just blatantly terrible equipment? That couldn't be right, could it? It couldn't. But the other side has no way to work that into their legal rule, none at all. There is no part of the law that they can point to, if their interpretation is correct, that allows Medicare to deny a claim with the old 1980s monitor. Similarly, if a treating physician was ordering MRIs every time a patient walked in with a headache or a paper cut, and then supervising those MRIs, there is no part of the law the other side can point to that would allow Medicare to say that's not reasonable and necessary. Because they think the entire reasonable and necessary requirement is distilled to these two requirements. And we know it's just not. It can't be. And so, because it's broader than that, and because it does turn in substantial part on whether the FDA has approved the technology, we win that argument, I think. But importantly, I just want to make clear, the FDA has these rules for a reason. They matter because they keep patients safe. Thank you, Your Honor. Thank you, counsel. I appreciate the arguments of counsel on both sides, and the case of Stenson versus Radiology Limited will be submitted.
judges: HAWKINS, COLLINS, Seeborg